UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANNETTE SCIBETTA,<br><br>*Plaintiff*<br><br>v.<br><br>ACCLAIMED HEALTHCARE et al.,<br><br>*Defendants.* | Case No.: 3:16-cv-02385 (PGS)(DEA)<br><br>**MEMORANDUM<br>AND ORDER** |

Relator Annette Scibetta ("Relator" or "Scibetta") brings this qui tam action on behalf of herself, the United States, and the State of New Jersey, against Defendants AcclaiMed Healthcare, Cane & Able, Raphael ("Ray") Stahl, Joan Stahl, Basha Stahl, David Evan Farrer, ABC Corporations 1-10, and John Does 1-10. The United States declined to intervene in the action. (ECF No. 6). After the Court dismissed the original complaint without prejudice, Relator filed an amended complaint. (Am. Complaint, ECF No. 20). In the present motion, Defendants AcclaiMed Healthcare, Ray Stahl, Joan Stahl, and Basha Stahl seek dismissal of the claims against them. (Moving Br., ECF No. 23). The Court heard oral argument on September 16, 2021. For the reasons that follow, Defendants' motion is granted in part and denied in part.

**I.**

This Court has subject-matter jurisdiction over Relator's federal claim under 28 U.S.C. § 1331 and supplemental jurisdiction over her state law claims under 28 U.S.C. § 1367. Further, the Court has jurisdiction over federal and state civil actions for false claims under 31 U.S.C. § 3732(a) and (b). Venue is appropriate in the District of New Jersey pursuant to 31 U.S.C. § 3732(a) because Defendants transact business in Lakewood, New Jersey.

1

## II.

Relator began working in customer service at Defendant AcclaiMed Healthcare, Inc., ("Defendant" or "AcclaiMed") on January 21, 2016. (Am. Compl. ¶ 12). AcclaiMed is a healthcare organization based in Lakewood, New Jersey. (*Id.* at ¶ 2). Ray Stahl is the president and/or owner of AcclaiMed, and his wife, Joan Stahl, and daughter, Basha Stahl, work for AcclaiMed as well. (*Id.* at ¶¶ 4, 6-7). According to Relator, AcclaiMed terminated her in July 2016 "after having expressed her concern over illegal activities and advising the defendants that she would not participate in the illegal conduct." (*Id.* ¶ 12).

During the course of her employment, Relator noticed sales, billing, and insurance irregularities which led her to believe Defendant was submitting fraudulent claims for reimbursement to state and federal health programs, including Medicaid and Medicare ("CMS"), the United States Department of Health and Human Services, and TRICARE.[1] (*Id.* ¶¶ 13-14). Her complaint describes numerous examples of Defendants' alleged fraud, including: (1) billing federal and state programs for new products when used products were provided to patients; (2) substituting inferior products for those prescribed; (3) providing fewer products than the quantity prescribed; and (4) billing patients differently based upon their perceived religious affiliation. (*Id.* ¶ 48). A brief description of each alleged fraudulent undertaking follows:[2]

 A) A child with the initials B.P. was routinely provided inferior diapers while TRICARE was billed for the more expensive, prescribed diapers. (*Id.* ¶ 16).

---

[1] TRICARE is a health care program operated by the Defense Health Agency within the Department of Defense. TRICARE. https://www.tricare.mil/About (last visited Nov. 22, 2021).

[2] For the sake of simplicity, the Court will refer to those alleged undertakings by the letters assigned in the motion to dismiss. *See* (Motion to Dismiss at 3-7).

2

B) Patient number 14065 was routinely provided fewer cans of a nutritional supplement than the amount prescribed; meanwhile, Medicare was billed for the prescribed amount. (*Id.* ¶¶ 17-18).

C) Patient numbers 15268 and 6590 routinely received cheaper and lower-quality diapers and pull-ups than those prescribed, while Medicare was billed for the more expensive products. (*Id.* ¶¶ 19-22; *see also id.* ¶ 37).

D) A patient with the initials W.B. was provided a used wheelchair while Medicare was billed for a new wheelchair; Relator alleges this undertaking occurred with respect to other patients as well. Further, Relator alleges Defendant(s) sought to charge W.B. a service fee of $75 to examine the used wheelchair, exclusive of the cost of replacement parts. (*Id.* ¶ 23).

E) AcclaiMed employees routinely clean and re-rent commodes as new when they have been used by other patients. (*Id.* ¶ 24).

F) Certain customers were billed separately through Cane & Able[3] at a different rate than other AcclaiMed patients. Relator alleges these patients "have names which would give the impression that the individuals practice the Jewish faith." (*Id.* ¶ 25).

G) AcclaiMed employees, at Ray Stahl's direction, would alter physicians' orders regarding the quantity, description, frequency, and length of need of prescribed products. For example, patient number 14949 was supplied substantially more formula than that prescribed by the doctor, and various details were changed regarding patient number 1745's prescribed order. (*Id.* ¶ 26).

---

[3] Relator alleges that Cane & Able, Inc. is a seller of Medicare chargeable items based in Langhorne, Pennsylvania. (*Id.* ¶ 3). Cane & Enable is listed as a division of Cane & Able, and Relator refers to both companies collectively as "Cane & Able." (*Id.* ¶ 5).

3

H) Joan Stahl fraudulently represented herself as a respiratory therapist when she attended to patient number 1745 in a hospital to adjust oxygen levels. Further, on April 6, 2016, a doctor called asking to speak to the respiratory therapist and was redirected to Joan Stahl. On information and belief, Relator alleges that this visit was billed to Medicare. (*Id.* ¶ 27).

I) Defendants frequently continued billing Medicare and other state and federal providers for products after they were returned by patients. For example, patient number 20098 died and the medical equipment provided was returned, but AcclaiMed kept billing Medicare for the equipment as if the patient was alive. Similar allegations concern D.H., W.M., L.J., C.C., M.P., S.K., J.M.V., and patient number 17717. (*Id.* ¶¶ 29-33, 36). In addition, patient number 20105 and a patient with the initials J.B. never received products that were billed to Medicare. (*Id.* ¶¶ 34, 45).

J) Ray Stahl added products to the delivery ticket, changed the prescription, and billed Medicare for a patient with the initials E.R. He also asked Relator to change the CMN (certificate of medical necessity) for that patient, but Relator refused to do so. (*Id.* ¶ 35).

K) Defendants continued billing Medicare for a commode after the patient returned the product. In addition, Ray Stahl directly charged the patient for an upgrade, which Relator believes is impermissible under CMS rules and regulations. (*Id.* ¶ 38).

L) Defendants billed CMS for more than twice the actual cost of an ear sensor for patient number 15151. Realtor believes this violates CMS's requirement that products be billed at the "best price." (*Id.* ¶ 39).

M) Patient R.K. was either supplied less of the prescribed product or a lower quality product. (*Id.* ¶ 40).

N) Defendants double billed for patient number 19442's catheters – specifically, Defendants collected $76.80 from the patient out of pocket and billed Medicare for the same amount. (*Id.* ¶ 41). Relator alleges a similar undertaking with respect to patient number 19452. (*Id.* ¶ 46).

O) Medicare was billed for more catheters than the number delivered to patient number 18820. (*Id.* ¶ 42).

P) Patient number 12036's monthly orders were "downgraded." Although unclearly stated, Relator alleges that Medicare was billed excessively because the value of the products was overvalued. (*Id.* ¶ 43).

Q) A pulse oximeter was ordered for patient T.B. and the coding was changed either from a purchase to a rental or vice versa. (*Id.* ¶ 44).

Based on the above allegations, Relator asserts the following violations in her six-count complaint: (1) Federal False Claims Act (Count I); (2) Conspiracy to violate the Federal False Claims Act (Count II); (3) New Jersey False Claims Act (Count III); (4) Conspiracy to violate the New Jersey False Claims Act (Count IV); (5) New Jersey RICO (Count V); and (6) Retaliation (Count VI).

### III.

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed for "failure to state a claim upon which relief can be granted." "In deciding a Rule 12(b)(6) motion, a court must take all allegations in the complaint as true and view them in the light most favorable to the plaintiff." *United States v. Loving Care Agency, Inc.*, 226 F. Supp. 3d 357, 362-63 (D.N.J. 2016). The plaintiff's factual allegations must give rise to a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has

5

"facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The question is whether the claimant can prove any set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that person will ultimately prevail. *Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2000), *cert. denied*, 531 U.S. 1149 (2001).

The Third Circuit set forth a three-part test for determining whether not a complaint may survive a motion to dismiss for failure to state a claim:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Santiago v. Warminster Township*, 629 F.3d 121, 130 (3d. Cir. 2010) (alteration in original) (quoting *Iqbal*, 556 U.S. at 675, 679).

When a complaint involves allegations of fraud, a plaintiff must meet the heightened pleading requirements of Fed. R. Civ. P. 9(b) to state a claim that survives under a Fed. R. Civ. P. 12(b)(6) challenge. *Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d 153, 155 (3d Cir. 2014). Under Rule 9(b), "a party must state with particularity the circumstances constituting fraud or mistake." The purpose of Rule 9(b) is to "provide[ ] defendants with fair notice of the plaintiffs' claims." *Foglia*, 754 F.3d at 156.

Regarding Rule 9(b)'s particularity requirement, the Third Circuit has held that a plaintiff need only allege "particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *Id.* at 155-58. A plaintiff

6

need not "identify a specific claim for payment at the pleading stage of the case to state a claim for relief." *Id.* at 156. "Courts . . . have found that a plaintiff may satisfy that requirement in one of two ways: (1) 'by pleading the date, place, or time of the fraud'; or (2) using an 'alternative means of injecting precision and some measure of substantiation into their allegations of fraud.'" *Loving*, 226 F. Supp. 3d at 363 (quoting *Flanagan v. Bahal*, No. 12–cv–2216, 2015 WL 9450826, at *3 (D.N.J. Dec. 22, 2015)).

## IV.

### A. False Claims Act

#### i. Federal Law

Relator does not plead a violation of a specific provision of the Federal False Claims Act but, based on the language in Count I and the facts presented in the complaint, the Court surmises she is alleging violations of subsections (a)(1)(A) and (a)(1)(B). Those provisions state that a person is liable under the False Claims Act who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval," or "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(A) and (B).[4]

The False Claims Act defines several key terms used in the above sections. First, a "claim" is

---

[4] "There are two categories of false claims under the FCA: a factually false claim and a legally false claim. A claim is factually false when the claimant misrepresents what goods or services that it provided to the Government and a claim is legally false when the claimant knowingly falsely certifies that it has complied with a statute or regulation the compliance with which is a condition for Government payment. Legally false claims may be express or implied. . . . For legally false claims, plaintiffs must plead that the regulation at issue is material." *United States v. Andover Subacute & Rehab Ctr. Servs. One, Inc.*, No. CV 12-03319-SDW-SCM, 2019 WL 4686963, at *4 (D.N.J. Sept. 26, 2019) (citations omitted) (quoting *U.S. ex rel. Wilkins v. United Health Grp., Inc.*, 659 F.3d 295 (3d Cir. 2011)). The parties disagree as to whether Relator relies on a factually false or legally false claim theory, or both. (*See* Moving Br. at 9; Opp. Br. at 6-9). Relator does not explicitly assert a particular theory in her Amended Complaint, though she alleges that Defendants both submitted false claims and falsely certified their compliance with CMS regulations. (*See, e.g.*, Am. Compl. ¶¶ 15, 23, 26, 53).

> any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property, that--
>> (i) is presented to an officer, employee, or agent of the United States; or
>> (ii) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government--
>>> (I) provides or has provided any portion of the money or property requested or demanded; or
>>> (II) will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded.

31 U.S.C. § 3729(b)(2)(A).

Second, the term "knowingly" means that a defendant "(i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1)(A). As an example, the Supreme Court stated:

> If the Government failed to specify that guns it orders must actually shoot, but the defendant knows that the Government routinely rescinds contracts if the guns do not shoot, the defendant has "actual knowledge." Likewise, because a reasonable person would realize the imperative of a functioning firearm, a defendant's failure to appreciate the materiality of that condition would amount to "deliberate ignorance" or "reckless disregard" of the "truth or falsity of the information" even if the Government did not spell this out.

*Universal Health Servs., Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989, 2001-02 (2016). No proof of specific intent to defraud is required to plead that a person acted "knowingly." 31 U.S.C. § 3729(b)(1)(B).

Third, "the term 'material' means having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4). In *Escobar*, the Supreme Court described this standard as "demanding," citing cases in which it was clear

that a party would not have paid funds or signed a contract if it knew about the misrepresentation in question. *See* 136 S. Ct. at 2003. *See also United States ex rel. Doe v. Heart Sol., PC*, 923 F.3d 308, 317-18 (3d Cir. 2019).

At least several of Relator's factual allegations are sufficient to state a claim for relief under the False Claims Act. For example, some of the alleged undertakings entail billing federal health care programs for more or higher-quality products than those delivered to patients. (*See, e.g.*, Undertakings A-D, M, O). Others involve double billing for the same product. (*See* Undertaking N). And in others, Defendants continued billing CMS for equipment that had been returned by patients, or after patients were deceased. (*See* Undertakings I, K; Am. Compl. Exs. G, T, U). In each of these scenarios, Defendants' claims for reimbursement allegedly contained false or misleading information about how much money the government owed AcclaiMed.

Under the statutory definition of "knowingly" and the Supreme Court's interpretation of that term, Relator has sufficiently alleged that Defendants either (1) had actual knowledge of their misrepresentations to the government, or (2) were deliberately ignorant of – or recklessly disregarded – the truth or falsity of the information they provided to the government. 31 U.S.C. § 3729(b)(1)(A); *Escobar*, 136 S. Ct. at 2001-02. The facts asserted in the Amended Complaint suggest that Defendants' acts were deliberate, such as Relator's allegations that Defendants engaged in fraudulent billing practices or instructed her to do so – even when she refused or expressed discomfort. (*See, e.g.*, Am. Compl. ¶¶ 15-16, 26, 35, 41).

Likewise, Relator has adequately alleged that Defendants' misrepresentations were "material to a false or fraudulent claim" because they had "a natural tendency to influence, or [were] capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(a)(1)(B); 31 U.S.C. § 3729(b)(4). The government would undoubtedly refuse to reimburse

AcclaiMed if it knew that patients received fewer or inferior products than what was billed, that patients had already paid AcclaiMed out-of-pocket for certain claims, or that AcclaiMed was billing for equipment that was no longer in use by patients. *See Escobar*, 136 S. Ct. at 2003.

Overall, Relator has met her burden to state a claim under the heightened pleading requirements of Fed. R. Civ. P. 9(b) and related case law in this District. *See Loving*, 226 F. Supp. 3d at 363, 366. She has pleaded specific facts – with supporting documentation – about the patients for whom she alleges fraudulent claims were submitted. These documents identify particular patients, transactions, prescriptions, delivery information, and other details that "inject[] precision and some measure of substantiation into [Relator's] allegations of fraud." *Loving*, 226 F. Supp. 3d at 363. She also attaches notes and correspondence with third parties that lend support to her allegations, and at least one copy of a bill that was submitted to Medicare. (*See* Am. Compl. Exs. F-J, L, S). Taken together, Relator has sufficiently alleged "particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *Foglia*, 754 F.3d at 155-58. As such, the Court will deny Defendants' motion to dismiss Count I of the Amended Complaint.

    ii.    **State Law**

The New Jersey False Claims Act contains similar prohibitions as its federal counterpart. In relevant part, it imposes liability on a person who "[k]nowingly presents or causes to be presented to an employee, officer or agent of the State, or to any contractor, grantee, or other recipient of State funds, a false or fraudulent claim for payment or approval;" or "[k]nowingly makes, uses, or causes to be made or used a false record or statement to get a false or fraudulent claim paid or approved by the State." N.J. Stat. Ann. §§ 2A:32C-3(a), (b). One notable difference between the State and Federal statutes is that the New Jersey law does not contain a

materiality requirement. The New Jersey False Claims act defines the terms "claim" and "knowingly" in substantially the same manner as its federal counterpart. *Compare* N.J. Stat. Ann. § 2A:32C-2 *with* 31 U.S.C. §§ 3729(b)(1), (b)(2)(A).

Because the New Jersey False Claims Act essentially mirrors the Federal False Claims Act with respect to the applicable sections in the instant case, the Court's analysis is the same under both statutes. *See Loving*, 226 F. Supp. 3d at 363-64. For the same reasons articulated in Section A.i, the Court finds Relator has sufficiently stated a claim under the New Jersey False Claims Act and denies Defendants' motion to dismiss Count III of the Amended Complaint.

**B. Conspiracy**

    **i.   Federal Law**

Under the Federal False Claims Act, conspiracy to violate the Act is a violation of the Act itself. 31 U.S.C. § 3729(a)(1)(C). In Count II of the Amended Complaint, Relator alleges Defendants "conspired with each other to defraud the United States when they 'knowingly made, used or caused to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government.'" (Am. Compl. Count II ¶ 2). That allegation invokes the language in 31 U.S.C. § 3729(a)(1)(G), which is known as the "reverse false claims" provision of the False Claims Act.[5] *See* Alice G. Gosfield, *Medicare and Medicaid Fraud and Abuse* § 5:10 (2020). However, Relator has not asserted a violation of that provision.

The facts alleged in Relator's complaint center around Defendants' submission of fraudulent claims – or statements material to fraudulent claims – under 31 U.S.C. §§

---

[5] The reverse false claims provision imposes liability on a person who "knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government." 31 U.S.C. § 3729(a)(1)(G).

3729(a)(1)(A) and (a)(1)(B). Essentially, she alleges that Defendants over-billed government health care programs in their claims for reimbursement, which caused (or was capable of causing) the government to over-pay Defendants. (Am. Compl. Count II ¶ 7). By contrast, a reverse false claim means that a defendant improperly avoided or reduced its own financial obligation to the government. Relator has not pleaded facts that show Defendants had an "obligation to pay or transmit money or property to the Government," or that they conspired to conceal, avoid, or decrease that obligation. *See* 31 U.S.C. § 3729(a)(1)(G).

Overall, Relator has not stated a claim for conspiracy to violate 31 U.S.C. § 3729(a)(1)(G). As a result, the Court will dismiss Count II of the Amended Complaint without prejudice. This Court will provide Relator an opportunity to amend her complaint.

    **ii.**    **State Law**

A person violates the New Jersey False Claims Act if s/he "[c]onspires to defraud the State by getting a false or fraudulent claim allowed or paid by the State." N.J. Stat. Ann. § 2A:32C-3(c). In Count IV of the Amended Complaint, Relator alleges Defendants "conspired with each other to defraud the State of New Jersey specifically, for monies that were paid by the State of New Jersey for services or products by AcclaiMed Healthcare and/or Cane & Able." (Am. Compl. Count IV ¶ 2). Relator alleges AcclaiMed, Cane & Able, and/or the individual defendants shared patients and billing information "to effectuate the false or fraudulent claims for payment," and cites a news article[6] in which David Farrer, President of Cane & Able, referenced its partnership with AcclaiMed. (Am. Compl. Count IV ¶ 3-4; *see also* Am. Compl. ¶¶ 5, 49).

---

[6] Crissa Shoemaker DeBree, *Cane & Able reopens for business in Penndel*, Bucks Cty. Courier Times (Aug. 29, 2014, 12:01 AM), https://www.buckscountycouriertimes.com/article/20140829/BUSINESS/308299843.

12

"In order to state a conspiracy claim under the [Federal False Claims Act], a plaintiff must allege '(1) a conspiracy to get a false or fraudulent claim allowed or paid; and (2) an act in furtherance of the conspiracy.'" *United States v. Medco Health Sys., Inc.*, No. CIV. 12-522 (NLH), 2014 WL 4798637, at *11 (D.N.J. Sept. 26, 2014) (quoting *U.S. ex rel. Lampkin v. Johnson & Johnson, Inc.*, No. CIV.A. 08-05362 (JAP), 2013 WL 2404238, at *5 (D.N.J. May 31, 2013)). "Critically, '[t]he essence of a conspiracy under the Act is an agreement between two or more persons to commit fraud.'" *Id.* (alteration in original). While the elements of a conspiracy claim under the New Jersey False Claims Act are not specifically set forth in the case law, a "civil conspiracy" is defined as

> a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage.

*Banco Popular N. Am. v. Gandi*, 876 A.2d 253, 263 (N.J. 2005) (quoting *Morgan v. Union Cty. Bd. of Chosen Freeholders*, 633 A.2d 985, 998 (N.J. Super. Ct. App. Div. 1993)).

Both federal and state definitions above require an agreement between two or more persons, plus an act in furtherance of the conspiracy. Here, there are insufficient facts in the Amended Complaint to satisfy those criteria. Relator simply makes general allegations about a "relationship" between AcclaiMed and Cane & Able, and she does not plead any facts that show there was an agreement between any two defendants to submit false claims. (*See* Am. Compl. Count IV ¶ 4). Merely alleging that two companies shared patients and billing information to effectuate the submission of false claims is insufficient to state a claim for conspiracy. (*See* Am. Compl. Count IV ¶ 3).

13

Further, to the extent Relator alleges the purported conspiracy involved charging patients different rates based on their perceived religion, she has not pleaded enough facts to support her claim. (*See* Am. Compl. ¶¶ 25). Even if her allegation were correct, it is not clear how charging some patients less than others plausibly led to the submission of false claims to the government.

For the foregoing reasons, Relator has failed to state a claim for conspiracy to violate the New Jersey False Claims Act, and the Court will grant Defendants' motion to dismiss Count IV of the Amended Complaint.

### C. New Jersey RICO

New Jersey's RICO statute permits "[a]ny person damaged in his business or property by reason of a violation of N.J.S. 2C:41-2" to sue and recover damages. N.J. Stat. Ann. § 2C:41-4. Relator contends Defendants engaged in a pattern of racketeering activity, in violation of N.J. Stat. Ann. § 2C:41-2, which caused damage to her "business or property" in the form of her lost employment and diminished reputation. (Am. Compl. Count V ¶¶ 16-22). However, her complaint does not plead any details about her injury, or how that injury was caused by Defendants' alleged racketeering conduct. The Court cannot infer specific damage to her "business or property" based on this vague, unsupported, and conclusory allegation.

Further, while the government may have been injured by Defendants' conduct, New Jersey RICO does not contain a qui tam provision that allows private persons to sue on the government's behalf. Rather, an individual must have standing in the form of an injury "proximately caused by the RICO predicate acts" to bring an action under this statute, *Interchange State Bank v. Veglia*, 668 A.2d 465, 472 (N.J. Super. Ct. App. Div. 1995); *see also Fairfax Fin. Holdings Ltd. v. S.A.C. Capital Mgmt., L.L.C.*, 160 A.3d 44, 66 (N.J. Super. Ct. App. Div. 2017), and Relator has not pleaded sufficient facts regarding her alleged injury. As

14

such, Relator has failed to state a claim under New Jersey RICO, and Count V of the Amended Complaint will be dismissed. The Complaint will be dismissed without prejudice to allow Relator an opportunity to plead details of her alleged injury.

### D. Retaliation

Count VI of the Amended Complaint alleges Defendants retaliated against Relator by harassing, threatening, and ultimately firing her. (Am. Compl. Count VI ¶¶ 3-4).

The federal False Claims Act protects whistleblowers from retaliatory actions by employers as follows:

> Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter.

31 U.S.C. § 3730(h).

To state a prima facie case of retaliation under § 3730(h), "a plaintiff must show his employer had knowledge that he was engaged in 'protected conduct' and that the employer retaliated against him because of that conduct." *Hutchins v. Wilentz, Goldman & Spitzer*, 253 F.3d 176, 188 (3d Cir. 2001). *See also United States ex rel. Petras v. Simparel, Inc.*, 857 F.3d 497, 507 (3d Cir. 2017). There must be a "nexus" between the protected activity and the retaliation. *Hutchins*, 253 F.3d at 188. "An employer's notice of the 'distinct possibility' of False Claims Act litigation is essential because without knowledge an employee is contemplating a False Claims Act suit, 'there would be no basis to conclude that the employer harbored [§

15

3730(h)'s] prohibited motivation [i.e., retaliation].'" *Id.* (alterations in original) (quoting *Mann v. Olsten Certified Healthcare Corp.*, 49 F. Supp. 2d 1307, 1314 (M.D. Ala. 1999)). "[T]he employer is on notice of the 'distinct possibility' of litigation when an employee takes actions revealing the intent to report or assist the government in the investigation of a False Claims Act violation." *Id.* at 189.

Whether an action constitutes protected conduct is an "intensely factual" question. *Id.* Protected conduct may include "investigation for, initiating of, testimony for, or assistance in a [FCA] suit," *id.* at 187, or reporting "fraudulent and illegal activity" to an employer, *id.* at 189. However, protected conduct does not include "an employee's investigation of nothing more than his employer's non-compliance with federal or state regulations." *Id.* at 187-88.

Under the New Jersey False Claims Act,

> No employer shall discharge, demote, suspend, threaten, harass, deny promotion to, or in any other manner discriminate against an employee in the terms and conditions of employment because of lawful acts done by the employee on behalf of the employee or others in disclosing information to a State or law enforcement agency or in furthering a false claims action, including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this act.

N.J. Stat. Ann. § 2A:32C-10.

Here, Relator has not sufficiently pled her retaliation claims. She alleges she engaged in protected conduct, specifically that she made "direct, vocal and constant complaints related to the various defendants['] violations of the law." (Am. Compl. Count VI ¶¶ 3-4). These allegations are too vague. This Court cannot discern from the Amended Complaint: which individual or individuals Relator complained to and whether they were in such a position to place

16

the defendants on notice of her possible FCA claim[7]; whether Relator specifically informed defendants she planned to file an FCA claim; or whether Relator specified in her complaints that she believed defendants were violating the law, *see Petre v. Alliance Healthcare Mgmt., LLC*, No. 20-9002, 2021 WL 1085522 (D.N.J. Mar. 22, 2021); *United States v. Pioneer Educ., LLC*, No. 16-1817, 2020 WL 4382275 at *5 (D.N.J. Jul. 31, 2020). In sum, it is unclear if Relator's complaints actually placed Defendants on notice of a potential FCA claim.[8] *Hutchins*, 253 F.3d at 188.

Second, she states that she "was continually harassed and/or threatened by her employer because of [her] willful expressions or acts . . . in furtherance of the action," and "was terminated due to her direct, vocal and constant complaints related to the various defendants violations of the law." (Am. Compl. Count VI ¶¶ 3-4). While termination is certainly a form of FCA retaliation, *Hutchins*, 253 F.3d 195, the complaint is devoid of any facts which could indicate a nexus between her protected acts and retaliation by defendants, *id.* at 188, aside from conclusory allegations of such a nexus.

For the foregoing reasons, Relator has failed to state a claim for retaliation under the Federal or New Jersey False Claims Acts. Relator's complaint also attempts to assert a retaliation claim under "other statutes, rules, codes or other protections" in addition to the state and federal False Claims Acts; however, the Court declines to infer violations of laws or regulations not specifically pleaded. In sum, Count VI of the Amended Complaint is dismissed with prejudice.

---

[7] For example, the knowledge of officers, directors, or "key employees" may be imputed to the corporation. *Gerling Int'l Ins. Co. v. Comm'r Gerling Int'l Ins. Co.*, 839 F.2d 131, 138-39 (3d Cir. 1988)

[8] Any actions putting Defendant on notice would have taken place *before* Relator filed the present action. Thus, Relator's argument that she was prohibited from discussing her False Claims Act complaint *after* it was filed under seal is not compelling. (See Opp. Br. 20, ECF No. 24).

## CONCLUSION

Because Relator has stated a claim for relief under the Federal and New Jersey False Claims Acts, Defendants' motion to dismiss is denied with respect to Counts I and III of the Amended Complaint. Defendants' motion to dismiss is granted as to the other counts of the complaint because Relator has failed to state a claim for retaliation (Count VI), a violation of New Jersey's RICO law (Count V), and conspiracy to violate the Federal and New Jersey False Claims Acts (Counts II and IV).

## ORDER

**THIS MATTER** having come before the Court on Defendant's Motion to Dismiss Relator's Amended Complaint (ECF No. 23); and the Court having carefully reviewed and taken into consideration the submissions of the parties, as well as the arguments and exhibits therein presented; and for good cause shown; and for all of the foregoing reasons,

**IT IS** on this 22 day of November 2021,

**ORDERED** that Defendant's motion to dismiss (ECF No. 23) is **granted in part** and **denied in part,** as follows:

(1) Defendant's motion is **denied** as to Counts I and III; and

(2) Defendant's motion is **granted** as to Counts II, IV, V, and VI. Counts II and V will be **dismissed without prejudice.** Counts IV and VI will be **dismissed with prejudice.**

(3) Relator will have 21 days from the entry of this order to amend her complaint as to Counts II and V.

_____
PETER G. SHERIDAN, U.S.D.J.